# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICAN WILD HORSE PRESERVATION CAMPAIGN, *et al.*, | ) ) ) ) |  |
| Plaintiffs, | ) ) |  |
| v. | ) ) | Civil Action No. 11-1352 (ABJ) |
| KEN SALAZAR, Secretary, Department of the Interior, *et al.*, | ) ) ) ) |  |
| Defendants. | ) ) |  |

## MEMORANDUM OPINION

This case involves a challenge to an administrative decision that was rescinded after the filing of the complaint, and therefore, the action is now moot.

In their complaint, plaintiffs challenged a June 13, 2011 decision by the Bureau of Land Management of the Department of the Interior, as it was modified on June 22, 2011 ("the Modified Decision"), to round up 90% of the wild horses from the White Mountain and Little Colorado Herd Management Areas ("HMAs") in Wyoming and to return no females and only surgically castrated males to the herds. Compl. ¶¶ 1, 40–41. The plaintiffs alleged that this decision was made in violation of the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.,* The Wild Free-Roaming Horses and Burros Act, 16 U.S.C. § 1331 *et seq.,* and the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* Compl. ¶¶ 2–4; 56–68. Plaintiffs asked the Court to declare that decision to be in contravention of law, and in their complaint and their motion for preliminary injunction, they asked the Court to enjoin the defendants from taking the proposed action.

On August 5, 2011, the defendants notified the Court and the parties that the modified decision had been rescinded, and that on August 4, the agency issued a Second Modified Decision Record, calling for a different course of action involving fertility control treatment of mares with the porcine zona pellucida (PZP) vaccine. *See* Notice of Second Modified Decision Record and the Exhibit attached thereto [Dkt. #11]. Since the decision under review has no operative effect, the Court is bound to dismiss the case for lack of subject matter jurisdiction. "The case has thus lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract [questions] of law." *Schering Corp. v. Shalala*, 995 F.2d 1103, 1106 (D.C. Cir. 1993) (internal quotation marks omitted).

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is an Art[icle] II as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

Article III, section 2 of the Constitution permits federal courts to adjudicate only "actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988). "This limitation gives rise to the doctrines of standing and mootness." *Foretich v. United* States, 351 F.3d 1198, 1210 (D.C. Cir. 2003). A case is moot if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Clarke v. United States*, 915 F.2d 699 (D.C. Cir. 1990). "It has long been settled that a

federal court has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Sierra Club v. Jackson*, --- F.3d ---, Civ. No. 10-5280, 2011 WL 2600841, at *2 (D.C. Cir. July 1, 2011) (internal quotation marks omitted), quoting *Church of Scientology v. United States,* 506 U.S. 9, 12 (1992). In light of those principles, this Court must dismiss the case. It has not been appointed to serve as a special monitor, overseeing the agency's implementation of the Wild Free Horses and Burros Act indefinitely.

During the telephone conference with the Court on August 2, 2011, when the government first indicated its intention to withdraw the Modified Decision, the plaintiffs suggested that since their challenge was to an action that involved both gelding and gathering, the Court should retain jurisdiction over the matter. But the lawsuit was not an all-purpose objection to wild horse management efforts in general – it was specifically addressed to the combination of gathering and gelding involved in the Modified Decision, and in particular, it was the extreme and irreversible nature of the particular method selected for thinning the herd that animated the complaint. *See, e.g.,* Compl. ¶¶ 1–5. ("This case challenges a recent, precedent-setting decision by the Interior Department's Bureau of Land Management ("BLM") to roundup and convert a viable, free-roaming wild horse population currently inhabiting over 700,000 acres of public lands in the state of Wyoming to a 'minimally-reproducing' population comprised primarily of castrated stallions, an action that will irreparably disrupt and destroy the social organization, natural wild and free-roaming behavior and viability of these herds.")

Moreover, all of the Declarations attached to plaintiffs' motion for preliminary injunction addressed the environmental, behavioral, genetic, physiological, aesthetic, social, and/or ecological effects of the particular population management approach embodied in the modified

3

decision: castration. *See* Declaration of Allen Rutberg, Exhibit L to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction [Dkt. #5], ¶¶ 12–23; Declaration of Anne Perkins, Exhibit M, ¶¶ 6–11; Declaration of Bruck Nock, Exhibit N, ¶¶ 10–19; Declaration of Jay Kirkpatrick, Exhibit O, ¶¶ 7–10; Declaration of Neda Mayo, Exhibit P, ¶¶ 8–16; Declaration of Lori Eggert, Exhibit S, ¶¶ 5–10; Declaration of Carol Walker, Exhibit X, ¶¶ 6–9; Declaration of Donna Duckworth, Exhibit Y, ¶¶ 9-11; and Declaration of Jonathan B. Ratner, Exhibit Z, ¶¶ 16–19. Thus, the pending action was inextricably bound to the particular "radical" and "controversial" "chosen course of action" that has since been abandoned. *See* Compl. ¶¶ 2, 4–5.

During the next telephone conference, on August 5, 2011, the plaintiffs expressed a different concern and urged the Court not to dismiss the action on the grounds that the agency action was "capable of repetition yet evading review." They indicated that there were at least four more BLM decisions in the works – involving different HMAs – in which the agency had indicated an intention to utilize gelding to reduce the herds. According to the plaintiffs, three of those decisions are not yet final, but the agency has issued at least one final decision involving "a gelding component" in another location. *See* Pls.' Notice of Authorities at 1.[1] Plaintiffs

---

1   During the telephone conference, plaintiffs complained that even if the original case is moot, they are entitled to amend as a matter of course under Fed. R. Civ. P. 15(a)(1). While a plaintiff may amend a complaint to add facts that show that jurisdiction exists, if there is no federal jurisdiction in a case, it may not be created by amendment. *Lans v. Gateway 2000, Inc.,* 84 F. Supp. 2d 112, 115 (D.D.C. 1999), citing *Stafford v. Mobil Oil Corp.,* 945 F.2d 803, 806 (5th Cir. 1991) (party may amend to make complete statement of jurisdiction, but when jurisdiction does not exist it may not be cured by amendment); *see also Odishelidze v. Aetna Life & Casualty Co.,* 853 F.2d 21, 24–25 (1st Cir. 1988) (citing 3 *Moore's Federal Practice,* § 15.14[3] (Matthew Bender 3d ed.)*,* amendment allowed when jurisdiction existed, but defectively plead) (internal quotation marks omitted). Plaintiffs are correct that they would have 21 days to amend as matter of course if there were still a lawsuit pending, but the Court's jurisdiction was extinguished when BLM's modified decision was issued. Plaintiffs may not now establish jurisdiction by amending the complaint.

informed the Court on August 8, 2010, that a final decision has been made by the BLM to gather and geld to some unspecified extent at the Barren Valley Complex in southeastern Oregon. Therefore, plaintiffs argue that the Court should not dismiss the present action, and it should permit the plaintiffs to expand the case to include other pending and future gelding plans. *Id*.

The Court finds that this is not a basis to decline to dismiss the action. This is not a situation where something happened once, it will definitely happen again, and the injured party needs to be able to get the court's attention at some point after the first event but before the second or it will lose its chance to prevent further injury. Rather, this is a challenge to a decision made on the record by a federal agency, which is not something that eludes judicial review.

The capable of repetition yet evading review exception to mootness involves two requirements: "1) the challenged action must be too short to be fully litigated prior to cessation or expiration; and 2) there must be a reasonable expectation that the same complaining party will be subject to the same action again." *Honeywell Intern., Inc., v. Nuclear Regulatory Comm'n.*, 628 F.3d 568, 577 (D.C. Cir. 2010) (internal quotation marks omitted). Neither requirement has been established here. Given the availability of temporary injunctive relief under Fed. R. Civ. P. 65 – the very rule invoked in this case – any future final agency decision can be reviewed before it is even initiated, and therefore, the plaintiffs cannot establish that the action would be completed before the matter could be heard. When an agency action is "in no danger of expiring before judicial review is complete. It would be entirely inappropriate for this court to . . . issue an advisory opinion to guide the [agency's] rulemaking." *National Wildlife Federation v. Hodel*, 839 F.2d 694, 742 (D.C. Cir. 1988) (holding that Secretary of the Interior's failure to re-promulgate national mining regulations remanded to him by the District Court rendered challenge to those particular regulations moot).

The D.C. Circuit relied on this reasoning when it was asked to opine about a regulation that had been rendered moot by subsequent legislation.

> This case does not fall within the 'capable of repetition, yet evading review' exception . . . because recurrence of the challenged activity will not 'evade review' should the parties' dispute recur. Even if the Commission were to adopt a revised regulatory scheme under the amended statute that purports to regulate attorneys, the new regulation will be subject to judicial review *at that time.*

*American Bar Ass'n v. F.T.C.,* 636 F.3d 641, 648 (D.C. Cir. 2011) (emphasis in original). Similarly, any final wild horse management decision issued by BLM can be challenged in the manner that was utilized in this case, and if appropriate, it can be temporarily or permanently enjoined before any irreversible steps are taken or any irreparable harm occurs.

The purpose of the capable of repetition but evading review exception to the mootness doctrine is to facilitate review of an action that is likely to recur *and be completed* before the court can act. The cases cited by plaintiff do not support a different result. *See, e.g., Honeywell*, 628 F.3d at 349 (applying mootness exception to a license exemption that plaintiff was required to reapply for on an annual basis); *Del Monte Produce Co. v. U.S.*, 570 F.3d 316, 322 (D.C. Cir. 2009) (involving a challenge to a one-year license that could not be fully litigated prior to its cessation or expiration); *Humane Soc'y of the U.S. v. EPA*, 790 F.2d 106, 113 (D.C. Cir. 1986) (applying the capable of repetition but evading review exception because case involved permits that lasted for one year, a "period all too frequently insufficient for litigation of serious issues to

a conclusion").[2] In this case, there is ample opportunity to seek judicial intervention before the action even begins.

Plaintiffs have not established the second prong of the exception either. "Standing jurisprudence is a highly case-specific endeavor, turning on the precise allegations of the parties seeking relief." *Hodel,* 839 F.2d at 703–4. Plaintiff American Wild Horse Preservation Campaign describes itself as a coalition of groups whose members enjoy viewing the horses in the particular Colorado HMA's at issue in this case. Compl. ¶ 7. Plaintiff Western Watersheds Project "is a non-profit conservation group founded in 1993 with 1,400 members and field offices in Idaho, Montana, Utah, Wyoming, Arizona, and California." Compl. ¶ 9. Plaintiffs Donna Duckworth and Carol Walker allege a personal stake in the horses in the particular herds involved in the pending case: plaintiff Duckworth "visits the White Mountain and Little Colorado HMA's nearly every day . . . She visits the horses so regularly that she now recognizes individual wild horses and their family groups." Compl. ¶ 13. And plaintiff Walker specifically alleges that she photographs the Little Colorado and White Mountain Herds, and that the particular BLM action challenged in the lawsuit will impair her aesthetic and occupational interests. Compl. ¶¶ 14–15. Assuming that these allegations were adequate to establish standing to seek review of the Modified Decision, they do not establish standing to challenge proposed gathers all over the country, and they do not appear to give rise to standing to challenge the

---

2   Plaintiffs also rely on language from *Nader v. Volpe*, 475 F.2d 916, 917 (D.C. Cir. 1973) to support their argument that even an agency's withdrawal of an order does not require the Court to dismiss the underlying action as moot. *Nader* is factually distinguishable from this case because it involved the legality of an exemption granted by the Secretary of Transportation. *Id*. Congress later passed a statute granting the Secretary the authority to issue the challenged exemption. The D.C. Circuit upheld the district court's determination that the case was not moot because even though the agency's order had been authorized by law, it was uncertain whether the statute applied retroactively or whether the Secretary had followed the proper procedure in issuing the exemption. *Id*. at 918. Neither of these factors is present in this case, and so the Court's analysis of the mootness question is not changed by *Nader*.

Oregon action noted in plaintiff's Notice of Authorities. And the Court has no jurisdiction to hear plaintiffs' concerns about the other proposed agency actions described in the Notice that have not yet become final.

Finally, this is a case under the Administrative Procedure Act. It is a challenge to a particular agency decision based upon a review of the particular administrative record that supported it. A challenge to a different agency decision – even one involving some of the same elements – will be based on a different record.[3] It will involve different HMAs, different horse populations, different environmental considerations, different state officials, and possibly, different decisions makers from a different agency field office. So the Court cannot simply leave this action open to be expanded to include whatever similar cases might come down the pike. And unlike other situations where a Court might apply the capable of repetition but eluding review exception, there is no danger that the agency will take action without giving notice beforehand.

Nothing in this Order should be read to suggest that the Court has considered or taken any position on the validity of the Second Modified Decision or any other pending or future decision of the BLM. Nothing in this Order shall bar the plaintiffs from seeking judicial review of any other final agency action. This Order provides simply that since the challenge to the

---

3     This case is distinguishable from *Payne Enterprises, Inc., v. U.S.*, 837 F.2d 486, 491 (D.C. Cir. 1988), a FOIA case in which the Court held that "even though a party may have obtained relief as to a *specific request* under FOIA, this will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future." The complaint in this case is not a broad challenge to an ongoing policy or practice – it challenged a specific decision made by the BLM. There is no allegation in the complaint that BLM regularly gelds horses or that the Modified Decision was issued in accordance with standing agency policy or practice – indeed, the complaint alleges that the decision was unprecedented. But even if plaintiff could argue that gelding has suddenly become the agency's preferred herd management policy choice, the mere existence of such a policy would not impair the plaintiff's legal rights in the future, because any final agency decision will be subject to judicial review.

8

Modified Decision of June 22, 2011 is no longer a live controversy, the Court lacks subject matter jurisdiction to hear it. The Court recognizes that the plaintiffs are opposed to its decision to dismiss the case, but perhaps they will take some comfort in the fact that they appear to have won.

Therefore, this action will be dismissed. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: August 8, 2011